## CONFIDENTIAL
## DOCUMENT FORM



*Case Records Public Access Policy of the Unified Judicial System of Pennsylvania*
204 Pa. Code § 213.81.
www.pacourts.us/public-records

Chris Maximus Armenti
(Party name as displayed in case caption)

Vs.

Travelers et al.
(Party name as displayed in case caption)

*CV - 2022 - 007395*
Docket/Case No.

Delaware County CCP
Court

This form is associated with the pleading titled Complaint ____ , dated October 4, 2022

Pursuant to the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania*, the Confidential Document Form shall accompany a filing where a confidential document is required by law, ordered by the court, or is otherwise necessary to effect the disposition of a matter. This form shall be accessible to the public, however the documents attached shall not be publicly accessible, except as ordered by a court. The documents attached will be available to the parties, counsel of record, the court, and the custodian. Please only attach documents necessary for the purposes of this case. Complete the entire form and check all that apply. This form and any additional pages must be served on all unrepresented parties and counsel of record.

| Type of Confidential Document | Paragraph, page, etc. where the confidential document is referenced in the filing: |
|---|---|
| ☐ Financial Source Documents | |
| ☐ Tax Returns and schedules | Paragraphs of Complaint listed below |
| ☐ W-2 forms and schedules including 1099 forms or similar documents | |
| ☐ Wage stubs, earning statements, or other similar documents | |
| ☐ Credit card statements | |
| ☐ Financial institution statements (e.g., investment/bank statements) | |
| ☐ Check registers | |
| ☐ Checks or equivalent | |
| ☐ Loan application documents | |
| ☒ Minors' educational records | 18,27,28, 32,40,41,42,44,45,70,71,114 |
| ☒ Medical/Psychological records | 13, 26, 29,30,31,35,36,37,38,39,43,47 |
| ☐ Children and Youth Services' records | |
| ☐ Marital Property Inventory and Pre-Trial Statement as provided in Pa.R.Civ.P. 1920.33 | |
| ☐ Income and Expense Statement as provided in Pa.R.Civ.P. 1910.27(c) | |
| ☒ Agreements between the parties as used in 23 Pa.C.S. § 3105 | 76,77,78,79,80,81 |

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non confidential information and documents.

Signature of Attorney or Unrepresented Party

Name: Joseph R. Armenti, Esquire

Address: 19 Windtree Lane

Glen Mills, Pa. 19342

October 1, 2022
Date

Attorney Number: (if applicable) 46356

Telephone: (610) 613-2739

Email: Atlas16@verizon.net

Rev. 1/2022

**EXHIBIT**
A

JOSEPH R. ARMENTI, ESQUIRE
By: Joseph R. Armenti, Esquire            Attorney for Plaintiff
Atlas 16 @ Verizon.net                  Chris Maximus Armenti
Identification No: 46356
19 Windtree Lane
Glen Mills, Pa. 19342
(610) 613-2739; Fax (610) 459-4716
Attorney for Plaintiff

| | | |
|---|---|---|
| Chris Maximus Armenti | : | COURT OF COMMON PLEAS |
| 19 Windtree Lane | : | |
| Glen Mills, Pa. 19342 | : | DELAWARE COUNTY |
|      Plaintiff | : | |

v.

The Travelers Companies, Inc.         :
a/k/a, d/b/s Travelers , f/k/a          :
St. Paul Travelers Companies, Inc.

v.

Peerless Insurance Company        :
Parent Company Liberty Mutual, a/k/a/ and/or
d/b/a Liberty Mutual Group and/or d/b/a
and/or a/k/a Liberty Mutual Agency Markets
and/or d/b/a Liberty Mutual Holding Company, Inc.
and/or d/b/a and/or a/k/a Safeco Insurance Co.
      Defendants

## NOTICE TO DEFEND

To Defendants: You have been sued in court. If you wish to defend against the claim outlined in the following pages, you must take action within twenty (20) days after the Complaint and Notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any other claim or relief requested by Plaintiff. You may lose money or rights that may be important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CAN NOT AFFORD ONE, TELEPHONE THE OFFICE OF SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Services
Delaware County
Delaware County Bar Association
335 W. Front Street
Media, Pa. 19063
(610) 566-6625

JOSEPH R. ARMENTI, ESQUIRE
By: Joseph R. Armenti, Esquire
Atlas16@ Verizon.net
Identification No: 46356
19 Windtree Lane
Glen Mills, PA 19342
(610)613-2739; Fax (610) 459-4716
Attorney for Plaintiff

Attorney for Plaintiff
Chris Maximus Armenti
Major Jury Trial
Assessment of Damages Required

| | |
|---|---|
| Chris Maximus Armenti | : COURT OF COMMON PLEAS |
| 19 Windtree Lane | : |
| Glen Mills, Pa. 19342 | : DELAWARE COUNTY, PENNSYLVANIA |
|           Plaintiff | : |
| v. | |
| Travelers a/d/b/The Travelers Companies, Inc. | |
| a/k/a, d/b/s Travelers, f/k/a | : |
| St. Paul Travelers Companies, Inc. | |
| 485 Lexington Avenue, New York, NY 10017 | |
| v. | |
| Peerless Insurance Company | : |
| Parent Company Liberty Mutual a/k/a/ and/or d/b/a | |
| Liberty Mutual Group | |
| and/or d/b/a Liberty Mutual Holding Company, Inc. | |
| and/or d/b/a Liberty Mutual Agency Markets | |
| and/or d/b/a and/or a/k/a Safeco Insurance | : |
| 175 Berkeley Street, | |
| Boston, Massachusetts 02116. | |
|           Defendants | |

## COMPLAINT –CIVIL ACTION
## INSURANCE – UIM/ BREACH OF CONTRACT /BAD FAITH

1.    Plaintiff, Chris Maximus Armenti is an adult individual citizen of Pennsylvania residing

in Delaware County at 19 Windtree Lane, Glen Mills Pa. 19342.

2.    Defendant, Travelers a/k/a/ and/or d/b/a/ The Travelers Companies Inc., (herein referred

to as "Travelers") is a corporation and/or company and/or other legal entity organized and/or is authorized

to do business and regularly does so in the Commonwealth of Pennsylvania and Delaware County. It has

a corporate headquarters located at 485 Lexington Avenue, New York, New York 10017 with its largest

office located at One Tower Square, Hartford CT. 06183.

3.    Defendant Peerless Insurance Company, (hereinafter also referred as Peerless) was

headquartered at 62 Maple Avenue Keene, New Hampshire 03431 was acquired by Liberty Mutual

Agency Markets – the strategic business unit of Liberty Mutual in 1999. Liberty Mutual Agency Markets

is a wholly owned business division of Liberty Mutual Group, d/b/a. and/or a/k/a. Liberty Mutual Insurance Company, and/or Liberty Mutual. Its corporate headquarter is located at 175 Berkeley Street, Boston Massachusetts 02116. Peerless is also a whole owned subsidiary of Liberty Mutual Group. Liberty Mutual Insurance Group d/b/a and/or a/k/a/ Liberty Mutual d/b/a and/or a/k/a Liberty Mutual Agency Markets is a successor in interest and/or parent company and/or business entity with authority over and/or control of Peerless and its agents, servants, employees, assigns, subsidiaries, divisional parent companies and/or business entities, and officers. Peerless has also been linked with, d/b/a, and/or a/k/a Safeco Insurance. Liberty Mutual Group acquired Safeco Inc. on or about September 22, 2008. Safeco had previously been doing business in conjunction with Peerless on personal lines of insurance. Liberty Mutual Insurance Group d/b/a and/or a/k/a/ Liberty Mutual d/b/a and/or a/k/a Liberty Mutual Agency Markets is a successor in interest and/or parent company and/or business entity with authority over and/or control of Peerless doing business in conjunction with Safco and with its agents, servants, employees, and officers.

4. Jurisdiction in this Honorable Court is properly based on the nature of the controversy, the location of the incident, and its binding power over the parties. There is *in personam* jurisdiction over Defendants who are organized and/or existing and/or are doing business in the Commonwealth of Pennsylvania 42 Pa. C.S.A. 5301. Jurisdiction over Defendants may also be established by the Pennsylvania "Long Arm" statute 42 Pa. C.S.A. § 5322 and/or is based on its significant contacts within this Commonwealth through its agents, affiliations, services, business transactions, business partners, solicitations, and/or personnel.

5. Venue is proper pursuant to Pa. R. C. P. 1006(a)(1), Pa. R. C. P. 2130(a) Pa. R. Civ. P. 2179 (a) (2)-(3) and (b) which states that an action upon a policy of insurance against an insurance company may be brought in the county where its registered office or principal place of business is located or where it regularly conducts business or the county where the transaction or occurrence took place. Plaintiff resides in Delaware County. Plaintiff's contract of underinsurance (UIM) with Defendants Peerless was made in Delaware county. Plaintiff's parents who purchased the insurance policy at issue

2

were residing in Delaware county at 2730 North Kent Rd, Broomall, Pa 19008 at the time of the contracting for car insurance. The authorized insurance contract for UIM with Defendant Travelers was offered and completed by an insurance agency Montgomery Insurance Services Inc., located in Delaware County, Pennsylvania at 330 West State Street, Media, Pennsylvania 19063.

6.     At all material times herein, Defendant Travelers employed as its agents, actual, apparent, and/or ostensible agents, servants, and/or employees, claims adjusters, attorneys, parent companies, subsidiaries, vendors, assigns, successors in interest, and/or other employees or vendors who were themselves involved in the handling of Plaintiffs UIM claim such that any liability imposing acts and/or omissions committed by said entities and/or persons imposes liability upon Defendant Travelers *inter alia* under the doctrines of respondent superior, vicarious liability, agency, actual, apparent, and/or ostensible agency, employer-employee, master-servant and/or laws governing successor in interests.

7.     At all material times herein, Defendant Peerless employed as its agents, actual, apparent, and/or ostensible agents, servants, and/or employees, claims adjusters, attorneys, subsidiaries, successors in interest, parent company, assigns, vendors, and/or other employees who were themselves involved in the handling of Plaintiffs UIM claim such that any liability imposing acts and/or omissions committed by said entities and/or persons imposes liability upon Defendant Peerless and its parent company Liberty Mutual Agencies Market, d/b/a and/or a/k/a and Liberty Mutual Group, d/b/a and/or a/k/a Liberty Mutual and those named above, under *inter alia* the doctrines of respondent superior, vicarious liability, agency, actual, apparent, and/or ostensible agency, employer-employee, master-servant and/or laws governing successor in interests.

8.     On or about January 29, 2004, Plaintiff Chris Maximus Armenti – approximately, four-year six-month-old minor child (D/B: 8/9/99), was a restrained passenger in an automobile operated by his Aunt Mrs. Michelle Masters.

9.     At the time of the accident, the third-party tortfeasor, Jason Mooney, sped through a stop sign on an icy road at an excessive rate of speed causing his SUV to violently crash into the vehicle driven by Mrs. Michelle Masters.

3

10. The tremendous impact caused Mrs. Michelle Masters' vehicle, a 1999 Chrysler Town and Country minivan, to spin out of control on the road before finally crashing into an embankment and coming to a sudden, violent, abrupt stop: the minivan was "totaled."

11. Mr. Mooney's vehicle, a 1994 Mazda, Navajo SUV, crashed and was overturned by the forcefulness of the collision. Both vehicles were "totaled" by the tremendously violent force of impact.

12. During the accident, Plaintiff Chris Maximus Armenti (Max), was a restrained passenger in the back seat- passenger side sitting near; his head and body were violently thrown back and forth and spun around with tremendous force, torque during the violent impact and later when the vehicle that he was in was further jolted causing the whiplashing his head, neck, and body when in crashed into the snow and ice-covered embankment coming to a sudden, violent stop.

13. As a result of the accident Plaintiff Chris Maximus Armenti was seriously injured sustaining *inter alia* a traumatic ⬛ injury ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛) which is described in more detail below.

14. At the time of the accident, Mr. Mooney had a minimal automobile policy of $15,000.00 with 21st Century Insurance; he had no excess or umbrella insurance policy and no substantial assets.

15. On September 6, 2006, Plaintiff's case against the third-party tortfeasor Mr. Mooney was dismissed without prejudice pending Plaintiff reaching adulthood, to further determine the extent of his injuries.

16. On or about November 8, 2018, the case between Plaintiff and the third-party tortfeasor Mr. Mooney settled for policy limits of $15,000.00.

17. Both Defendant UIM insurers Travelers and Peerless gave consent to settle the third-party tortfeasor claim.

18. After settling with the third party tortfeasor, Plaintiff pursued his UIM claim with both Travelers and Peerless but without conducting any IME, in bad faith, neither company offered any money to settle Plaintiff's UIM claim despite having received hundreds of pages of medical and school records documenting very serious injuries and damages, ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ therefore, this lawsuit, in

4

bad faith, was forced upon Plaintiff by Defendants to collect funds owed to him under the two contracts of insurance.

19.     At the time of the accident, Plaintiff Chris Maximus Armenti was insured with Defendant Travelers as an "occupant" of Mrs. Michelle Master's vehicle. According to Travelers, the amount of UIM coverage available to Plaintiff as an occupant related by blood, but not living in the house under its policy is $500,000.00. (Exhibit A: Policy # 9764801691011).

20.     Travelers admitted that Plaintiff is a covered person for purposes of UIM under Ms. Master's policy #9764801691011.

21.     At the time of the accident, Chris Maximus Armenti was also insured under his parents' full tort automobile policy with Peerless - policy # 33P M374848. (Exhibit B: Policy # 33P M374848).

22.     Plaintiff's parents' policy provided UIM motorist coverage by the terms of the Pennsylvania Motor Vehicle Financial Responsibility Act for $250,000.00 per person, per vehicle stacked for a total of available coverage of $500,000.00 to Plaintiff. (Exhibit B: Policy # 33PM374848-Endorsement PP04191298 page 1 of 4 and page 2 of 4).

23.     Both Defendants Travelers and Peerless, were given timely notice that Plaintiff Chris Maximus Armenti sustained serious injuries and that there was a potential UIM claim.

24.     Under Pennsylvania Law 75 Pa. C.S.§ 1733, the priority of UIM coverage recovery is established; Defendant Travelers is primary and Defendant Peerless is secondary.

25.     However, under Pennsylvania law, there is no requirement that the primary UIM carrier's policy limits are exhausted before the secondary UIM carrier's benefits can be surrendered.   Nationwide Ins. v. Schneider, 906 A.2nd 586, (Pa. Super 2006), affirmed, Nationwide v. Schneider, 599 Pa. 131 (2008).

26.     After the accident, Plaintiff began to exhibit ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

deficits and damages from injuries sustained in the accident that he had never previously experienced.

5

27. Plaintiff's pre-school teachers also noticed some changes in Plaintiff's behavior ███

███ ██ █ ███ ██ ██ ██ ██ ██ ██ ██ ██ ██ ███

28. His pre-school teachers recommended that Plaintiff be tested ██ ██

29.

███ ██ ██ ██ █ ██ ██ ██
██ ██ █ █ ██ █
██ ██ █ ██ ██ ██
██ ██

30. █ █ ██ █ █ ██
█ ██ ██ ██ ██ █ █

31. Prior to the accident, Plaintiff had no ████ ████ deficits. Plaintiff had met all his developmental milestones and was a bright, happy child doing well in his second year of preschool.

32. As a result of the accident and the injuries he sustained, Plaintiff required ongoing educational assistance and academic accommodations ████ ██ ██ ██

█ ██ ██ ██
█ ██ ██ ██

33. As a result of his injuries, Plaintiff also has been required to have private tutoring, home tutoring, medication, and extended-time accommodations at school to take tests and finish projects.

34. As a result of his injuries, in elementary school, Plaintiff was often required to come to school early before class to make up his schoolwork; and on many days Plaintiff was forced to miss his recess period to finish his incomplete schoolwork.

35. In addition to the above academic accommodations, Plaintiff needed to be followed throughout his school years by a developmental pediatrician as a result of this accident; ████

██ ███ ████ ████
█ ██ ██ █ ██ ██ ██



36. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

37. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

38. Since the accident, some eighteen years ago, Plaintiff continues to suffer ▓▓▓

39. Given that ▓▓▓▓▓▓ impairments have persisted ▓▓▓▓▓▓▓ into his adulthood, these injuries ▓▓▓▓▓▓▓▓ are permanent.

40. Plaintiff ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ completed high school at Malvern Prep and entered St. Joseph's University in Philadelphia (hereinafter SJU).

41. At SJU, Plaintiff was followed through the Department of Disabilities; and, was given an extended time accommodation for exams only; he needed to use medication as well as other supports to aid him in performing and completing the work required for his courses.

42. As a result of his injuries, Plaintiff has suffered from persistent difficulty in remembering that he has a homework assignment and/or the due dates for these assignments - which are then handed in late for a diminished grade.

43. Plaintiff has been suffering *inter alia* from depression, anxiety, and frustration because he could not get the grades he hoped - even though there were times that he understood the material, he often would forget to hand in assignments and ▓▓▓▓▓▓▓▓ also affected his ability to take tests that required him to memorize data and materials.

7

44.     As a result of his injuries and their sequalae, Plaintiff has had to withdraw from some college courses, and has had to reduce his college course load; as a result, it will take longer for Plaintiff to complete his degree causing him to incur greater educational expenses and suffer a prolonged delay in entering the competitive labor market; his injuries and their sequelae will negatively impact his life-long earning potential.

45.     Despite these aids, Plaintiff has had to repeatedly withdraw from classes during the semesters and even failed some classes. After four years at SJU, Plaintiff transferred to West Chester University where he hopes to finish his college education.

46.     Plaintiff has a life expectancy of approximately 84 years so he has and will continue to suffer these permanent deficits caused by the car crash for approximately a period of 61 more years.

47.     As a direct and proximate cause of the accident, Plaintiff Chris Maximus Annenti sustained serious, permanent injuries ████████████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
█████████████████████

48.     As a direct and proximate cause of injuries sustained in the accident, Plaintiff has incurred medical expenses for the ongoing treatment and care and will continue to incur medical and related expenses into the indefinite future all to his great detriment, and damage. His losses are far in excess of the third-party tortfeasor's policy of $15,000.00, therefore, Plaintiff makes a claim for UIM policy limits along with costs, fees, interest, punitive damages, and bad faith damages.

49.     As a direct and proximate cause of the accident, Plaintiff has suffered and will continue to suffer into the indefinite future *inter alia* humiliation, the loss of life's pleasures, loss of the enjoyment of life, inconvenience, and loss of pursuits that he might have engaged in but for his injuries, a loss of his independence, the loss of self-image as a competent person, frustration, a sense of helplessness, fear of

8

failure. His losses are far in excess of the third-party tortfeasor's policy of $15,000.00; therefore, Plaintiff makes a claim for UIM policy limits along with costs, fees, interest, punitive damages, and bad faith damages.

50.     As a direct and proximate cause of the accident, Plaintiff has suffered and will continue to suffer into the indefinite future *inter alia* emotional distress, depression, anxiety, headaches, worry, stress, psychological injuries, and increased risk of dementia in later life all to his great detriment, and damage. His losses far exceed the third-party tortfeasor's policy limits of $15,000.00 therefore, Plaintiff makes a claim for UIM policy limits along with costs, fees, interest, punitive damages, and bad faith damages.

51.     As a direct and proximate cause of the accident, Plaintiff sustained injuries that will negatively impact his future earning potential and cause him to lose future earnings and/or employment advancement. Plaintiff's damages are far more than the third-party tortfeasor's policy of $15,000.00, therefore, Plaintiff makes a claim for UIM policy limits along with costs, fees, interest, and punitive damages.

52.     Throughout the UIM claim, Plaintiff has forwarded a copious amount of medical and school records ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

53.     Plaintiff was a young ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, despite this fact, Defendant Travelers' prematurely and without reasonable basis concluded that his damages would not exceed $15,000.00.

54.     Defendant Travelers without performing any IME and in bad faith stated in a letter dated March 16, 2005: "Our investigation shows that the responsible vehicle involved in the auto accident does have sufficient liability limits in which to fully recover for your client's bodily injury claim. Please contact me as soon as possible with any questions since we are reviewing to close our file."

55.     Travelers took an unreasonable, pre-mature and intractable position that Plaintiff claim was not worth more than $15,000.00 and did so without an IME, sufficient investigation, and/or a willingness to properly evaluate, re-evaluate or take into account that Plaintiff was a child just five years

9

old and in early stages of his cognitive development and that his TBI might have a significant and permanent negative impact on his cognitive development, cognitive functioning, and future economic life.

56. From the onset of Plaintiff's UIM claim, Traveler's had a fixed mindset that it would deny the claim, without ever seeking to support its conclusion that it was not worth more than $15,000.00; there is no reference to any expert being retained by Travelers to examine the on-going medical or school documentation to provide a basis for its position.

57. Defendants have had possession of Plaintiff's consistent ▓▓▓▓▓▓▓ test results ▟
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▟▓▓

58. In November 2012, Plaintiff was evaluated by Dr. Malynn Kuangparichat of Kelly Counseling; and she discovered that Plaintiff teste ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▟▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

59. Dr. Kuangpaurichat opined that Plaintiff' ▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓Similarly, he demonstrates a statistically significant difference between ▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓

60. As Plaintiff matured, there was some improvement in his ▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
reasonable degree of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓

61. Dr. David Massari opined within a reasonable degree of ▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Plaintiff sustained in the accident of 1/29/2004.

62. Dr. Massari's report/s were forwarded to Defendants Travelers and Peerless, but they did not request a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

63. On 5/23/2021, Travelers denied Plaintiff's UIM based on the medically unsubstantiated basis that was contrary to years of medical testing data contained in Plaintiff's reports from numerous examinations stating that: "His biological mother was given Brethine to stop premature labor. This drug has been linked to autism spectrum disorders and brain impairment. There were concerns in the records that his biological mother may have been bipolar and may have been a drug abuser. While the records confirm that your client suffered from a learning disability, it is not clear that there is any connection between the accident and the learning disability. It is not clear that he suffered any injury in the accident. For this reason, I have no alternative but to respectfully deny your client's underinsurance motorist claim."

64. This letter dated 5/23/2021 manifests an on-going, systematic; systemic bad faith position first taken on the part of Defendant Travelers in 2005; Travelers lacked any reasonable basis for its denial of Plaintiff's UIM claim because Plaintiff does not have autism or an autism spectrum disorder and, despite years of testing, he has never been diagnosed with autism or an autism spectrum disorder.

65. This letter dated 5/23/2021 manifests an ongoing, systemic bad faith on the part of Defendant Travelers and a lack of a reasonable basis for its denial of Plaintiff's UIM claim because there is no consensus in the scientific community that Brethine (also called Terbutaline) increases the risk for autism or any other cognitive damage to an unborn child in utero; it is in fact, a medication that has been and continues to be approved by the FDA for short term use in stopping preterm labor; and, is still used by physicians per ACOG guidelines as an intervention to prevent premature labor.

66. This letter dated 5/23/2021 manifests on-going, systemic bad faith on the part of Defendant Travelers and a lack of a reasonable basis for its denial of Plaintiff's UIM claim because Plaintiff's specific ▓▓▓▓▓▓▓▓▓▓ re of the type recognized by the medical community and in the medical literature as being typically associated with a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ it is not type of global impairment or other type ▓▓▓▓▓▓▓▓▓▓▓▓

11

██████████████████████████ acquired during fetal development in utero whether as a result of Brethine exposure or some other mechanism.

67.     This letter dated 5/23/2021 manifests on-going, systemic bad faith on the part of Defendant Travelers and a lack of a reasonable basis for their denial of Plaintiff's UIM claim because there is both a lack of evidence to support their contention that Plaintiff's birth mother abused drugs during her pregnancy and an absolute lack of any evidence whatsoever, that even if his birth mother had taken drugs at some point in her life, that it would have resulted in ████████████████████████ manifesting for the first time, and coincidentally after the auto accident when Plaintiff was approximately 4 and ½ years old.

68.     This letter dated 5/23/2021 manifests ongoing, systemic bad faith on the part of Defendant Travelers which lacks any reasonable basis for its denial of Plaintiff's UIM claim because not only does Travelers lack sufficient evidence to support their contention that Plaintiff's birth mother was bipolar, but also, Plaintiff was never diagnosed with bipolar depression, bipolar would be very rare in a toddler and child when Plaintiff cognitive impairments were diagnosed; moreover, his cognitive impairments are not they type typically associated with bipolar depression, and moreover, if he were to develop bipolar depression or some other mood or psychological disorder then ███████ he sustained in the accident either caused, and/or increased his risk of his acquiring these disorders and therefore, Travelers would still owe Plaintiff his UIM benefits.

69.     Defendant Travelers lacked a reasonable basis for its denial of Plaintiff UIM claim because although they acknowledge that Plaintiff ████████████████ there was no pre-accident record either medical or school record of a ████████████████ Plaintiff's pediatric records and preschool records indicate that before the accident, Plaintiff was functioning normally without any impairment and was meeting all his developmental milestones.

70.     In the pre-school record dated 2003-2004, Plaintiff is described as a happy child who is competent and self-confident and who can dress himself by putting his own snow gear on completely independently, he is described as having good hand-eye coordination and his math skill being on target.

12

71.     After the accident, pre-school records described Max as having ups and downs,

72.     The letter dated 5/23/2021 manifests on-going, systemic bad faith on the part of Defendant Travelers because it appears to be using unfairly high legal standard -one which requires proof of causation by "clear" evidence stating that "it is not clear that there is any connection between the accident and the learning disability" -- Travelers knew or should have known that the 'clear and convincing' evidence standard is not the proper standard to apply when assessing causation- it is a higher bar than the "more probable than not" standard which is applicable for purposes of determining if Plaintiff was eligible for UIM benefits; Traveler's assertion that Plaintiff failed to meet this higher standard and prove that his injuries were clearly the result of the accident was made in bad faith and amounted to an unreasonable basis for denying him UIM benefits.

73.     As evidenced in its denial letter, Travelers has been and continues to engage in unconscionable speculation to maintain its ongoing, systemic, bad faith denial of Plaintiff's UIM benefits as was first articulated 16 years earlier in 2005; it failed to fairly evaluate the record, re-evaluate the medical and school records and in keeping with its original intractable position, it never set a proper "reserve" on Plaintiff's claim.

74.     Even if Plaintiff had a pre-existing condition, Defendants Travelers and Peerless acted in bad faith and without a reasonable basis for denying him UIM benefits; Defendants were still obligated under the contracts of insurance to compensate Plaintiff if the accident exacerbated any pre-existing condition or if the accident triggered and/or exacerbated the development of some cognitive deficit or other related damages that Plaintiff was pre-disposed to.

75.     As Plaintiff was injured when he was four and six months old, thus his medical records, and pediatric developmental records contain confidential information protected by law, said laws include the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 45 C.F. R. § 164.500-164.534; the Family

13

Educational Right and Privacy Act of 1974 (FERPA) 20 U.S.C. § 1232g; the Mental Health Procedures Act (MHPA) 50 P.S. §§ 7111 and other child protection laws.

76.     Plaintiff requested that Defendant Travelers sign a reasonable confidentiality agreement designed to protect Plaintiff's confidential records from any unauthorized retention and/or illegal dissemination by Defendant Travelers and/or its agents and/or vendor, and/or assigns, subsidiaries, parent companies, attorneys, successors in interest, providers, associates, business divisions, or any other such entity.

77.     Travelers unreasonably refused to sign the confidentiality agreement forwarded by Plaintiff's counsel on May 31, 2019; or to sign subsequent revisions of said agreement; but rather, made an unreasonable dispute concerning the confidentiality agreement to engage in a deliberate bad faith delaying action improperly impeding the development of the UIM claim.

78.     Instead, Defendant Travelers produced a confidentiality agreement that was manifestly unreasonable and objectionable and made in bad faith because inter alia, it clearly stated that Defendant Travelers could use Plaintiff's confidential information in the realm of quality control and only required Travelers to destroy or returned records that were not archived with the insurance company itself -but nothing stopped it from improperly and illegally archiving all of the medical records, and stated that it could retain a copy of all records attached as deposition exhibits and/ or motions and/or any records produced by Plaintiff's discovery responses.

79.     Defendant Travelers also forwarded a revised confidentiality agreement that in bad faith unreasonably shifted the burden to Plaintiff's attorney to request the return of confidential records from Traveler's experts even though the identity of said experts might not be revealed pursuant to Pa. R. Civ. 4003.5(a)(3).

80.     Defendant Travelers insisted in bad faith that Plaintiff reach a "compromise" in favor of an "illusory" confidentiality agreement – which did not give any genuine confidentiality or correspond to the existing laws. The law dictates that a minor's records are confidential, and the rights of a minor child granted to him under the laws to protect his confidential records cannot be compromised.

14

81.    By refusing to agree to a reasonable confidentiality agreement, and by proposing an "illusory" agreement, Defendant Travelers has acted in bad faith wherein it deliberately, willfully, intentionally, and knowingly engaged in an ongoing bad faith strategy to cause undue and unnecessary delay in the resolution of Plaintiff's UIM case.

82.    Early on Defendant Peerless conceded that Plaintiff had suffered a traumatic brain injury as a result of the automobile accident and had a duty independent of Travelers to offer to settle Plaintiff's UIM claim; Peerless wrote in their July 10, 2006 letter: "It is our understanding that Chris may have developmental problems relative to injuries suffered in the automobile accident captioned above."

83.    Defendant Peerless acted without a reasonable basis, with no IME or appropriate review, and in bad faith by taking the position that they could not pay out on Plaintiff's UIM claim because the combined third-party tortfeasor policy limits of $15,000.00 and Defendant Travelers' UIM policy was more than adequate to cover the lifetime of damages suffered by Plaintiff.

84.    Defendant Peerless stated in a letter dated 2/18/2019 that it agreed with Travelers' position that the available underlying UIM limited of its policy was $500,000.00 for a total of $515,000.00 UIM available funds.

85.    Then in an email dated 2/5/2020 Defendant Peerless deliberately and in bad faith or recklessly elevated the bar that Plaintiff had to meet to obtain his UIM benefits through Peerless, stating that "[w]e reviewed what was submitted and did not find value coming close to or exceeding the underlying tortfeasor and UIM host vehicle policies of One Million and fifteen thousand Dollars.... We continue to monitor for any additional information."

86.    Although Peerless is the secondary UIM insurer in the 75 Pa.C.S. §1733 order of priority; it nevertheless had an independent duty to conduct a reasonable, prompt, and thorough investigation and to re-evaluate the ongoing medical and school records to determine whether UIM damages exceed the third-party tortfeasor's policy limits of $15,000.00 and the primary UIM limits combined.

15

87.     Peerless never took an independent medical of Plaintiff nor did it have a medical expert review records or obtain an opinion which was presented to Plaintiff. The company never set a proper reserve on the claim of Plaintiff.

88.     Plaintiff forwarded a demand letter for UIM policy limits on May 21, 2021. Peerless did not make any offer in response to that demand letter despite acknowledging that Plaintiff had suffered ▬▬▬▬▬▬▬▬▬▬, because of the accident – and certainly never acted to rule out that Plaintiff suffered forcing Plaintiff to file suit.

89.     The priority of recovery in 75 Pa.C.S. §1733 does not require the exhaustion of the primary UIM carrier's limits before the secondary insurer's limits can be tendered; Defendant Peerless had an independent duty to tender its policy limits or make a reasonable offer to settle Plaintiff's UIM claim.

90.     From the very beginning, Defendant Travelers had no intention of conducting an ongoing reasonable investigation or evaluation of Plaintiff's UIM claim as was evidenced from its initial letter and in an email by the Peerless adjuster dated July 15, 2020, which stated that Travelers was preparing to close its UIM file; they intended to close the file a full year before they sent a denial letter and merely acted to delay the case.

91.     At all relevant and material times herein, there was no contractual basis to deny Plaintiff's claim; payment of insurance premiums was made under both the Travelers and Peerless policies; no exclusions of coverage to Plaintiff under either UIM policy.

92.     From the onset of Plaintiff's UIM claim, there is no issue of contributory or comparative negligence on the part of Plaintiff, nor any policy exclusions that would have prevented either Defendant from tendering the UIM policy limits to Plaintiff or from making a reasonable offer to settle his UIM claim.

16

## COUNT I
## BREACH OF CONTRACT
## PLAINTIFF v. DEFENDANT TRAVELERS

93.    Plaintiff incorporates by reference thereto Paragraphs 1 through 92 as though fully set forth herein.

94.    At the time of the accident referenced herein, Plaintiff was insured as an "occupant" in Mrs. Master's vehicle under an in-force automobile policy with Travelers. Lawful consideration was paid for this automobile policy. (Exhibit A: Policy #9764801691011).

95.    With Travelers' consent, the third-party tortfeasor tender of his minimal automobile policy limit of $15, 000.00 accepted by Plaintiff in November 2018.

96.    The third-party tortfeasor was underinsured which was and/or ought to have been reasonably apparent to Travelers early on; and, the damages sustained by Plaintiff, which he will suffer for some 80 years during his lifetime would far exceed the third-party policy limits of $15,000.00; and therefore, Plaintiff was owed UIM benefits under Defendant Travelers' policy.

97.    Travelers admitted that Plaintiff is insured under the Masters' policy and that there is a maximum underinsured benefit amount available of $500,000.00.

98.    Plaintiff provided documentation in good faith of very substantial permanent medical and academic damages and demanded the maximum $500,000.00 under the policy which itself is not sufficient to compensate Plaintiff for some 80 years of personal disabilities, suffering, and substantial diminution of Plaintiff's economic horizons described in part in the instant complaint.

99.    Plaintiff satisfied all of his obligations under the policy, including but not limited to all conditions precedent and all conditions subsequent. No exclusions to the policy apply to Plaintiff who was a restrained passenger at the time of the accident. (Exhibit A).

100.    Plaintiff clearly and demonstrably sustained serious damages and will continue to sustain damages for the rest of his life expectancy– the monetary value is more than Travelers UIM policy limits which it knew or reasonably could have discovered with a proper, prompt, and fair investigation.

17

101.    Defendant Travelers breached its contract when it denied UIM benefits to Plaintiff which were due him under the contract and by failing to perform its contractual obligations and duties under the UIM policy and pay policy benefits.

102.    Furthermore, Travelers deliberately, willfully, intentionally, recklessly, and in bad faith engaged in a strategy of deception as a basis for refusing to make a reasonable offer to settle Plaintiff's UIM claim; instead, Defendant Travelers offered zero dollars to settle Plaintiff's UIM claim from early on and nothing could change that determination to deny Plaintiff's claim.

103.    Defendant Travelers' reckless, unreasonable, deliberate, willful, intentional, and knowing breach of its obligations, duties, and promises to Plaintiff under its contract was also a direct and proximate cause of additional damages to Plaintiff in the form of lost benefits under the contract, interest, and expenditures for attorney's fees, costs, along with the substantial loss of the time-value of money.

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter judgment on liability in Plaintiffs' favor and against Defendant Travelers, and award to all benefits available under the Travelers' UIM policy, in addition to interest, attorney's fees, delay damages, court costs, punitive damages, and any other such relief as the Court may deem just and proper.

## COUNT II
## BAD FAITH PURSUANT TO 42 Pa.C.S. § 8371
## PLAINTIFF v. TRAVELERS

104.    Plaintiff incorporates by reference thereto Paragraphs 1 through 103 as though fully set forth herein.

105.    At the time of the accident referenced herein, Plaintiff was a restrained passenger in a vehicle insured by Travelers and covered for underinsurance benefits under its policy.

106.    Lawful consideration was paid for said automobile policy including underinsurance benefits.

18

107.     Under the terms of the policy with Travelers, Plaintiff is entitled to UIM benefits for damages exceeding the policy limits of an underinsured vehicle – which, in this case, was insured for only $15,000.00.

108.     Plaintiff satisfied all obligations under the policy including but not limited to all conditions precedent and all conditions subsequent; no policy exclusions apply to Plaintiff.

109.     Plaintiff sustained serious, permanent, life-altering damages that were copiously documented and that are monetarily far in excess of the third-party tortfeasor liability policy of $15,000.00; and which were compensable under Travelers' UIM policy.

110.     Plaintiff made a reasonable demand for Travelers' UIM policy limits because his permanent life-altering damages that he will suffer in his lifetime- some eighty years far exceeded the value of the tortfeasor's policy limits and the policy limits of Travelers UIM policy - for damages including, but not limited to, a diminishment of and/or loss of life's pleasures, humiliation, and loss of self-confidence as a person, and his ability to act as an independent person, ▮▮▮▮▮▮▮▮▮▮▮ increased risk of developing dementia, major loss of economic horizon, and need for a lifetime of medical monitoring and care.

111.     Plaintiff sustained ▮▮▮▮▮▮ that is serious, permanent, painful, and debilitating, and which has had and will continue to cause disability, depression, loss of enjoyment of life, feelings of humiliation, loss of a sense of self-worth and will significantly diminish his economic horizons, and his future earning capacity.

112.     Despite having reams of documentation of Plaintiff's serious and permanent and debilitating injures, and the very limited value of the tortfeasor's policy, Travelers recklessly and without reasonable basis persisted in its denial of Plaintiff's UIM claim. Travelers acted in om-going, systematic, inherent, systemic bad faith by failing promptly, fairly, and thoroughly to investigate Plaintiff's claim re-evaluate the developing medical record and make a reasonable offer to settle Plaintiff's UIM claim without a reasonable basis.

19

113. Defendant make no offer to settle, but rather willfully, intentionally, knowingly, recklessly, and unreasonably engaged in a strategy to delay the resolution of Plaintiff's UIM claim by producing drafts of an "illusory" confidentiality agreement which necessarily and foreseeably had to be rejected by Plaintiff. During this period, Travelers withheld, utilized, and/or invested the funds that it ought to have paid out to Plaintiff to increase its profits to the detriment of Plaintiff.

114. Defendant Travelers acted in systemic bad faith and without a reasonable basis and/or with reckless disregard for the lack of a reasonable basis when it denied UIM benefits. From the onset of Plaintiff's UIM claim, and while handling Plaintiff's claim, Travelers engaged in and manifested an intent to continue engaging in violating Pennsylvania's bad faith law: *42 Pa. C.S.A. §8371 et seq.* which permits an award of punitive damages, interest at 3% plus prime, assessment of court costs, and attorney's fees against the insurer "who has acted in bad faith toward the insured." Travelers acted in bad faith by:

a) ignoring the actual, on-going, mounting damages document in Plaintiff's medical and school records, and otherwise casting a wide net of specious, meritless, baseless, speculative, fictive alternative "may be" causes in an attempt to deceitfully deflect and falsely "explain away" Plaintiff's ▋▋▋▋ ▋▋▋▋▋▋▋▋▋▋▋▋ including, but not limited to, Travelers' determination that Plaintiff's ▋▋▋▋▋▋▋▋▋▋▋ were due to autism or an autism spectrum disorder when Plaintiff was never diagnosed with autism or an autism spectrum disorder.

b) denying that the violent accident that "totaled" both cars was the cause of Plaintiff's ▋▋▋▋ ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋ based on mere speculation and "concerns in the record" that she "may have" been bipolar or "may have" been a drug abuser without any evidence to substantiate or base this self-serving speculation as the basis for causation.

c) by stating without any IME or consideration of the contrary evidence-based medicine in Plaintiff's records that Plaintiff's ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋ may have been caused by his birth mother being given Brethine to stop pre-term labor despite there being no scientific consensus that this drug (which has been used millions of times to stop premature births and is still used under FDA and ACOG guidelines) causes TBI

20

and its sequelae, or cognitive birth defects and/or the type of cognitive deficits; Plaintiff was never diagnosed with such birth defects and did not begin to suffer ▓▓▓▓▓▓▓▓▓until immediately after the violent vehicle accident which caused his▓▓▓

    d)    denying that the violent accident that "totaled" both the SUV and the minivan was the cause of Plaintiff's▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and in bad faith contrary to the developed evidence-based medical record, and without any IME, mercilessly, speciously, deceitfully deflected to deny his claim by alleging a congenital condition may have been the cause these damages in utero contrary to the Plaintiff's evidence-based medical records, tests, expert reports and opinions, and his school records demonstrate that he was a normal child meeting all of his developmental milestones before the accident that occurred when he was 4 years and 6 months and when there were no congenital defects have been diagnosed before the accident.

    e)    denying that the violent accident that "totaled" both vehicles was the cause of Plaintiff's▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓and ignoring evidence-based medical connection to link – without a reasonable basis, Plaintiff▓▓▓▓▓▓ impairment to a congenital in utero cause based on Plaintiff's stuttering before the accident; many successful, and highly intelligent people stuttered when they were children this list includes actors, artists, kings, and even one American President and stuttering is not evidence that they sustained an in utero brain injury.

    f)    by taking a position from the onset of the claim as illustrated in its March 16, 2005, letter that Plaintiff's injuries were not worth more than the $15,000.00 third-party tortfeasor's policy limits – despite Plaintiff sustaining a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ while maintaining this intractable position even after it became apparent in the developing evidence-based medical and school records, by the testing▓▓▓▓▓▓▓▓▓▓and the expert opinions linking Plaintiff's post-accident deficits to his injuries acquired in the accident, that his injuries were indeed having a negative, permanent and debilitating impact▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

g). by manifesting from the very beginning a deliberate, willful, intentional, knowing, reckless, and unreasonable intent to deny Plaintiff coverage under the Traveler's policy by malicious, speculative, meritless, specious claims grounded in systemic policy and procedure of deceit and delay.

h). by maintaining an intractable position from 2005, that Plaintiff's damages were no more than $15,000.00 without, *inter alia*, ever seeking an IME of Plaintiff to support its conclusion; or producing an expert evaluation of the medical and school records contrary to those of Plaintiff that linked the injuries sustained in the accident ▓▓▓▓▓▓▓▓▓▓▓▓

i). from the beginning, Defendant was using its claims department as a profit-making center and withholding a benefit payout for their pecuniary interest.

j). from the beginning, Defendant failed to conduct a prompt, thorough, fair, and reasonable investigation, and failed to rely on all of the available information before rushing to the conclusion that Plaintiff's claim arising from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ foreseeable life-time medical monitoring and care, foreseeable negative educational challenges, and foreseeable negative impact on his entire life-time earning capacity was not worth more than $15,000.00 of the third-party tortfeasor's policy limits.

k). from the beginning, Defendant was engaging in a violation of its very own policies and procedures and/or it failed to adopt and implement proper claims handling procedures *inter alia* misrepresenting in 2005 that it had sufficient data and performed a thorough and fair investigation which determined that the Plaintiff's claim was not worth more than $15,000.00; and later by continuing denial of the claim on false, specious, manufactured, speculative "may-be" style grounds while engaging in a strategy of delay for years, even after receiving copious documentation, including evidence-based medical records, school records, expert reports from Plaintiff demonstrating that his injuries were serious, debilitating, permanent, affecting the quality of his life and related to damages resulting from injuries sustained in the vehicle accident.

l). prematurely closing, or threatening to close its file.

22

m).     deliberately, willfully, intentionally, knowingly, recklessly, and unreasonably refusing to enter into a reasonable Confidentiality Agreement to protect minor Plaintiff's medical and school records and thereby deliberately, willfully, intentionally, knowingly setting up a false pretextual basis to delay in bad faith the resolution of this case.

n).     failing to make a reasonable, thorough, fair, and timely investigation of Plaintiff's claim and/or insisting that Plaintiff give up his rights to the confidentiality of a minor's medical and school records before they would consider the reams of Plaintiff's medical and school records as a basis for their evaluation of his UIM claim.

o).     deliberately and unreasonably and recklessly urging Plaintiff to sign an "illusory" version of a Confidentiality Agreement while that said Agreement would not protect Plaintiff's confidential records.

p).     taking the intractable position that Plaintiff ▓▓▓▓ deficits were due to some "may be", speculative, unsubstantiated, meritless, congenital causes contrary to the evidence-based medical records and expert reports of Plaintiff from ▓▓▓▓▓▓▓▓, et al. and knowing that his deficits were ▓▓▓▓▓▓

q)     taking the intractable position that Plaintiff was not entitled to UIM benefits because his ▓▓▓▓ may-be" congenital when there was no evidence-based medicine to support that speculation, no IME, etc. and some of Plaintiff's deficits, for example, ▓▓▓▓▓▓

r)     by cherry-picking the medical record to use what it could to further their self-interest and ignore the totality of the record or the record which disproved their position, for example, they stated in bad faith in their denial letter that the Plaintiff was evaluated in the E.R. and that there was no sign of injury when they knew or should have known that ▓▓▓▓▓▓

23



s)    by falsely claiming speculative in utero injuries unsupported by the developed, evidence-based medical record, but never seeking to rule out the exacerbation of those alleged pre-existing conditions in a thorough, timely, and fair manner by an IME;

t)    by failing to follow their policies and procedures and the law, setting a reasonable reserve on the claim, and making its claims handling division a profit center.

u)    forcing the Plaintiff to file suit to obtain UIM benefits owed to him.

v)    failing to institute, create, fashion, enact appropriate policies and procedures for claims handling, and/or failing to abide by, follow, consult, and properly evaluate a claim under said policies and procedures if they were proper when evaluating Plaintiff's claim.

w)    Furthermore, Travelers never ruled out the exacerbation of a pre-existing condition, or the initiation of a latent condition as a result of the accident, which, in either case, would still be grounds for them to pay the Plaintiff UIM proceeds.

115.    Under the law of this Commonwealth and based upon its fiduciary relationship with Plaintiff, Defendant Travelers breached its duty and obligation to act in good faith and fair dealing and to use the requisite care in evaluating Plaintiff's claim as is demonstrated by its multiple violations of the provisions of the Unfair Insurance Practices Act *(UIPA) (40 P.S. 1171.1 et seq.);*

a).    by violating  *UIPA, 40 P.S. 1171.5 (a) (10) (vii)* which forbids insurance companies from "compelling persons to institute litigation to recover amounts due under an insurance policy ..." which Travelers did despite having in their possession reams of documentation for years (letter to Travelers Adjuster on or about January 8, 2018) - documents spanning from the date of the accident in 2004 through Plaintiff's recent college experience demonstrating a consistent and permanent brain injury.

b).    by violating  *UIPA, 40 P.S. 1171.5 (a) (10) (vi) of the Act by:* "Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear."

24

c).     by violating *UIPA. 40 P.S. 1171.5(a)(10)(v)* by failing to make a reasonable and timely offer and/or tender policy limits after it became reasonably clear the serious and permanent nature of Plaintiff's injuries.

d).   by failing to set an adequate reserve amount given the medical evidence, or to re-evaluate and/or periodically review the reserve and adjust as more medical evidence was generated and/or made available, and failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies in violation of the *UIPA, 40 P.S. 1171.5 (a)(10)(iii).*

e   by making their claims department a profit-making center through systemic and unreasonable denial of *bona fide* claims.

116.   Defendant's bad faith acts and/or omissions as alleged above are of such an outrageous nature as to demonstrate bad faith through intentional, willful, wanton, or reckless conduct and/or are motivated by self-interest and/or an attempt at ill gains all to the detriment of Plaintiff. Plaintiff reserves the right to amend his pleadings to conform to the developed evidentiary record.

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter judgment on liability in Plaintiff's favor and against Defendant Travelers and award an amount of all benefits available to Plaintiff under the policy to the limits policy, plus interest, fees, delay damages, court costs, punitive damages, damages pursuant to the bad faith laws of Pennsylvania, and any other such relief as the Court may deem just and proper.

## COUNT III
## VIOLATION OF THE PENNSYLVANIA UNFAIR
## TRADE PRACTICES AND CONSUMER PROTECTION LAW
## ("UTPCPL") 73P.S. 201-1 et seq.
## PLAINTIFF v. TRAVELERS

117.   Plaintiff incorporates by reference thereto Paragraphs 1 through 116 as though fully set forth herein.

25

118. At all relevant and material times herein, the statutory provisions of the Pennsylvania Unfair Trade Practices And Consumer Protection Law *(UTPCPL)* 73 *P.S.* § 201-2(4)(xxi) proscribed "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."

119. The Act was promulgated to protect a class of individuals like Plaintiff who are insured under a policy purchased "primarily for personal, family or household use" under 73 *P.S.* § 201-9.

120. The purposes of this Law include the protection of beneficiaries of insurance contracts from the systemic deception in the insurance industry and by individual insurance companies, and those purposes apply to the instant case: the Act mandates that insurers like Defendant, Travelers act in good faith and with fair dealing and without the use of fraudulent, unfair, and/or deceptive acts or practices, e.g. delaying strategies, low balling claims, etc. *201-2(4) (xiv)*. "Failing to comply with terms of any written guarantee or warranty given to the buyer at, prior to, or after a contract for the purchase of goods or services is made".

121. The defendant had a fiduciary duty to act in good faith and with fair dealing towards every insured covered under the policy of insurance and that includes Plaintiff.

122. Defendant, Travelers breached its duties and obligations under the contract and acted unfairly and deceptively for financial gain to the detriment of Plaintiff by:

a) drafting an unacceptable, illusionary Confidentiality Agreement as a pre-text as outlined in averments within this complaint above, unfair and/or deceptive practice to delay a payout UIM proceeds to further the company's financial interests.

b) knowingly, willingly, intentionally, engaging in unfair and/or deceptive practices in the form of repeatedly asking for documents already produced; acting with plausible deniability for causing the delay in making a prompt and thorough investigation so that the Defendant could invest the money it ought to have paid out to Plaintiff during the years of delay; wear down Plaintiff by delay, and then downplay the seriousness and permanent nature of Plaintiff's injuries to "justify" denial of his UIM benefits.

26

c) moving to close the file based on a false excuse that Plaintiff had not provided sufficient information and/or cooperated when Defendant itself caused a delay and an impediment by *inter alia* refusing to sign a reasonable confidentiality agreement designed to protect the unauthorized dissemination of a minor child's medical and school records but rather insisting on a revised agreement which was foreseeably objectionable on its face.

d) misrepresenting either directly or by inference that they would make a fair and full offer to settle his UIM claim if Plaintiff, would provide more medical information - when at all material and relevant times, Defendant had in its possession or should have had in its possession sufficient medical records to verify the serious and permanent nature of Plaintiff's injuries.

e) misrepresenting that it had sufficient evidence and performed a thorough analysis and arrived at the determination that Plaintiff's claim was not worth more than $15,000.00.

f) failing to act in good faith to either make a timely good faith offer to settle the Plaintiffs' UIM claim until he was forced to expend time and money to file a complaint before the statute of limitations ran.

g) misrepresenting repeatedly to Plaintiff that it was in the process of conducting a prompt, full, and fair investigation of his claim while acting, in reality, to merely delay a settlement and/or in a manner which would cause delay and allow the statute of limitations to run for Defendant's financial benefit.

h) deliberately, knowingly, intentionally, or recklessly misrepresenting to Plaintiff that they desired and/or intended to investigate the UIM claim when they never intended to make a full and fair offer to settle the claim, but rather moved to close their file on the matter.

i. forcing the Plaintiff to file suit to obtain benefits owed under the policy of insurance.

123. Defendant Travelers breached its fiduciary duty of good faith and fair dealing by the aforementioned unfair and/or deceptive acts and/or omissions in its dealings with Plaintiff.

124. At times material and relevant hereto, Defendant Travelers knew or should have known that there was no reasonable basis for denying Plaintiff's claim and for their acts and/or omissions as are

27

set forth above and that said acts and/or omissions, misrepresentations, and deceptive practices would harm Plaintiff.

125. Plaintiff reasonably and justifiably relied on Defendant's misrepresentations that they would act in good faith to evaluate his claim and pay for damages under the policy of underinsurance, and this went on and on up to the point where it became manifestly apparent that Defendant was stalling by producing version after version of an amended "confidentiality agreement" all of which were "illusory" and could never be endorsed by Plaintiff since they did not provide genuine "confidentiality" of his records. Plaintiff relied on Defendant's misrepresentations to his detriment and loss.

126. Defendant's unfair and deceptive business practices are ongoing and continue to date and have caused Plaintiff additional harm. .

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter judgment in Plaintiff's favor and against Defendant on liability and award all benefits under the policy, plus interest, fees, delay damages, court costs, punitive damages, and any other such relief as the Court may deem just and proper.

## COUNT IV
## BREACH OF CONTRACT
## PLAINTIFF v. PEERLESS INSURANCE CO.

127. Plaintiffs incorporate by reference thereto Paragraphs 1 through 126 as though fully set forth herein.

128. At the time of the accident, Plaintiff was insured for UIM benefits under his parents Maria Armenti, MTS, Esquire, and Dr. Joseph Armenti, Esquire's in-force automobile policy with Peerless. Lawful consideration was paid for the automobile policy. (Exhibit B: Policy # 33PM374848).

129. The third party tortfeasor had a minimal automobile policy limit of $15, 000.00 which was underinsured for the damages sustained by Plaintiff which included, but were not limited to, ▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆ including but not limited to increased risk of early

28

dementia, requiring a lifetime of medical monitoring and care, and the foreseeable negative impact of said injuries on Plaintiff's educational performance and matriculation, as well as the negative lifetime impact of his injuries on his economic horizons – his life expectancy being approximately 84-85 years of life.

130. Peerless knew and should have been reasonably aware many years ago that Plaintiff sustained damages far, far in excess of the third party tortfeasor and Defendant Peerless' policy limits; and Peerless denied coverage without ever conducting an IME, and despite all evidence-based medicine, school records, and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ reports in their custody and control over many years substantiating the enormous negative financial impact that these permanent, lifetime injuries and damages had and will continue to have on Plaintiff.

131. Under the Peerless policy, Plaintiff is insured for $250,000.00 for each of two vehicles; under the stacking provision, a total of $500,000.00 is available UIM benefits. (Exhibit B Policy #33PM374848 – Endorsement PP0 4191298 page 1 of 4, 2 of 4).

132. Plaintiff satisfied all of his duties and obligations under the policy, including but not limited to all conditions precedent and all conditions subsequent; the policy was a full tort policy. No exclusions to the policy applied. (Exhibit: B).

133. Defendant Peerless breached the contract and did not honor its contractual obligations and duties and promises under the policy when it failed to investigate Plaintiff's claim and make a reasonable offer to fairly settle its UIM claim or to otherwise tender policy limits which were owed to Plaintiff under the contract; Peerless has made its claims handling division a profit-making center promptly, thoroughly, and fairly.

134. Defendant Peerless' breach of contract was the direct and proximate cause of Plaintiff's damages in the form of lost UIM benefits, payments, premiums, interest, investments, attorney's fees, and costs.

135. Plaintiff is entitled to attorney's fees and costs resulting from this action.

29

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant Peerless in an amount in excess of the arbitration limits including all benefits under the policy, interest, fees, delay damages, court costs, and any other such relief as the Court may deem just and proper.

## COUNT V
## BAD FAITH PURSUANT TO 42 Pa. C.S. § 8371
## PLAINTIFF v. PEERLESS

136.  Plaintiffs incorporate by reference thereto Paragraphs 1 through 135 as though fully set forth herein.

137.  At the time of the accident referenced herein, Plaintiff was a restrained passenger in a vehicle insured by Peerless with coverage for underinsurance benefits under the policy.

138.  Lawful consideration was paid for said automobile policy including underinsurance benefits; the policy is full tort.

139.  Under the terms of the policy with Peerless, Plaintiff is entitled to UIM benefits for damages arising from the injuries sustained in the accident which caused damages both financial and non-financial exceeding the policy limits of an underinsured vehicle.

140.  Plaintiff satisfied all obligations under the policy including but not limited to all conditions precedent and all conditions subsequent. No exclusions applied; therefore, Peerless knew or should have known years ago - early in the claims process that Plaintiff had sustained injuries and damages that were far, far in excess of the third-party tortfeasor liability policy, and which were compensable under Peerless UIM policy. (Exhibit B).

141.  Plaintiff made a reasonable demand for underinsured policy limits because Plaintiff's damages far exceeded the policy limits of $15,000.00 of the third-party tortfeasor. Plaintiff sustained damages from injuries sustained in the motor vehicle accident that was serious, permanent, painful, and debilitating and which will not only diminish his earning and future earning capacity, but also require life-

30

long medical monitoring and care; he has also suffered a diminishment of and/or loss of life's pleasures, humiliation, and loss of self-confidence as a person, and his ability to act as an independent person.

142. Despite numerous medical records and other documentation showing that Plaintiff sustained serious, permanent, and debilitating injures, Peerless has acted in bad faith by failing to make a reasonable, thorough, prompt, and fair investigation of Plaintiff's claim and then make a reasonable and timely offer to settle Plaintiffs' UIM claim; and, it denied Plaintiff's claim without an IME, without a reasonable basis and in reckless disregard of a lack of a reasonable basis for said failure to make an offer to settle this UIM claim.

143. Defendant Peerless breached the contract and failed in its contractual obligations and duties under the policy and failed in its fiduciary duties to Plaintiff when they failed to evaluate Plaintiff's claim and make a reasonable offer or to tender what was owed to Plaintiff under the policy promptly, thoroughly, and fairly. It denied Plaintiff's claim without a reasonable basis for said denial and they did so in bad faith.

144. At times material and relevant hereto, Defendant Peerless knew or should have known that there was no reasonable basis for failing tender policy limits or otherwise for failing to make a reasonable offer to settle Plaintiff's UIM claim and did so act with reckless indifference and/or reckless disregard for the lack of a reasonable basis.

145. Based upon Defendant's fiduciary relationship with Plaintiff, Defendant Peerless owed Plaintiff a duty and obligation to act in good faith and fair dealing with Plaintiff and to use the requisite care in evaluating Plaintiff's claim. Defendant Peerless breach its duty and obligations to Plaintiff and acted in bad faith by:

a) failing to make a thorough, prompt, fair, reasonable, independent investigation and thereafter closing the file prematurely and/or refusing to pay out any amount of UIM benefits merely because Defendant Peerless decided in bad faith to deny Plaintiff's legitimate UIM claim when they knew or should have known that there is no requirement under Pennsylvania law that

31

the primary UIM carrier's policy limits be exhausted before the secondary UIM carriers can be surrendered.

b) claiming in an email dated 10/31/2018, that Plaintiff had not made a timely claim for UIM benefits and/or that the claim was closed not long after the loss when actually, Defendants were put on notice of a UIM claim in 2006 via Plaintiff's attorney's letter in 2006 and in when such a UIM claim was acknowledged by Defendant in a letter dated 7/10/2006.

c) failing to make a prompt, thorough, and fair investigation of Plaintiff's claim and then to make a reasonable and timely offer and/or to tender policy limits given the damages flowing from a serious and ▮▮▮▮▮▮▮▮▮▮ reasonably and foreseeably exceeded the fifteen thousand dollar tortfeasor limits, and even underlying UIM claim combined; and doing so without a reasonable basis when Defendant knew or recklessly disregarded its lack of a reasonable basis in denying his claim for UIM benefits.

d) failing to promptly, thoroughly, and fairly evaluate the value of Plaintiff's damages or base its decision on the proper dollar amount available in the underlying Traveler's UIM policy, and/or deliberately or without reasonable basis stating at one point to Plaintiff that the Traveler's underlying UIM limit was $500,000.00 and then at a later date elevating the bar for recovery by stating that they did not find the value of Plaintiff's claim to come close to or that it exceeds Defendant Traveler's underlying UIM limit of one million dollars;

e) failing to conduct a prompt and full and fair and thorough investigation and evaluation of Plaintiff's injuries and damages including, failing to conduct an IME, request any and all medical records which it may have deemed necessary to perform a prompt, full, and fair evaluation of Plaintiff's damages and failing to establish a proper reserve.

f) causing an unreasonable delay in the resolution of this UIM claim and thereby forcing Plaintiff to file a civil action to obtain his UIM benefits under the policy;

g) misrepresenting either directly or by inference that it would make a reasonable offer to settle her UIM claim if Plaintiff, would provide more medical information - when at all

32

material and relevant times, Defendant had in its possession or had the power to obtain, or should have had in its possession sufficient medical records to verify the serious and permanent nature of Plaintiff's injuries and school records to understand the injuries impact on Plaintiff. The defendant acted unfairly, strategic delay by forcing Plaintiff to "jump through hoops" unnecessarily and for the sole purpose of causing a delay to wear Plaintiff down in the hopes that he would capitulate and then accept a low ball offer - but no offer at all was made;

h) failing to set an adequate reserve amount given the medical evidence and to re-evaluate and/or periodically review the reserve and make adjustments as more medical evidence was generated and/or made available, failing to follow its claims handling guidelines, failing to obtain expert opinions and/or blindly relying on their own unknown expert's opinions without performing an IME.

i) establishing an intractable frame of mind to deny the claim from the beginning of the claim and without any prompt, thorough, and fair evaluation and re-evaluation that Plaintiff was not entitled to his UIM benefits - despite mounting evidence in the developing evidence-based medical and school records demonstrating that Plaintiff injury and its sequelae were very serious, permanent and debilitating and that his damages were well in excess of the tortfeasor's policy limits of $15,000.00 and in excess of Defendant Traveler's UIM limits of $500,000.00.

j) failing to institute, create, adopt, activate, and administer reasonable and adequate claims handling policies and procedures, and/or following them when evaluating Plaintiff's claim

146.    Under the law of this Commonwealth and based upon its fiduciary relationship with Plaintiff, Defendant Peerless owed Plaintiff a duty to act in good faith and fair dealing and to use the requisite standard of good faith dealing in evaluating Plaintiff's claim. Defendant Peerless recklessly and unreasonably breached its duty toward Plaintiff and acted in bad faith as partially demonstrated by its multiple violations of the provisions of the *Unfair Insurance Practices Act (UIPA) (40 P.S. 1171.1 et seq.)*;

33

a).     by violating *UIPA, 40 P.S. 1171.5 (a) (10) (vii)* which forbids insurance companies from "compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due under the ultimately recovered in actions brought by such persons" and doing so despite having in their possession reams of documentation for several years said documents spanning from the date of the accident in 2004 through Plaintiff's recent college experience demonstrating a consistent and permanent brain injury.

b).     by violating *UIPA, 40 P.S. 1171.5 (a) (10) (vi)* of the Act by: "Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear."

c).     by violating *UIPA, 40 P.S. 1171.5(a)(10)(v)* for failing to make a reasonable and timely offer and/or tender policy limits after it the serious and permanent nature of Plaintiff's injuries became reasonably clear.

d).     by violating *UIPA, 40 P.S. 1171.5 (a)(10)(iii)*, failing to set an adequate reserve amount given the medical evidence, or to re-evaluate and/or periodically review the reserve and adjust as more medical evidence was generated and/or made available, and failing to adopt and/or implement reasonable standards for the prompt investigation of claims arising under insurance policies in violation of the UIM claim.

e).     Defendant has made its claims handling department a profit-making center contrary to the law.

147.    Defendant's bad faith acts and/or omissions as alleged above are of such an outrageous nature as to demonstrate unreasonable, intentional, willful, wanton, or reckless conduct and/or are motivated by self-interest and/or an attempt at ill gains to the detriment of Plaintiff causing Plaintiff damages in the delay of payout of his UIM claim, interest, attorney's fees, costs, and other damages.

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant Peerless in an amount in excess of the arbitration limits including

34

all benefits under the policy, interest, fees, delay damages, court costs, punitive damages, and any other such relief as the Court may deem just and proper.

## COUNT VI
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ("UTPCPL") 73P.S. 201-1 et seq. PLAINTIFF v. PEERLESS

148.    Plaintiff incorporates by reference thereto Paragraphs 1 through 147 as though fully set forth herein.

149.    At all relevant and material times herein, the statutory provisions of the Pennsylvania *Unfair Trade Practices and Consumer Protection Law (UTPCPL) 73 P.S. § 201-2(4)(xxi)* were in force and proscribed: "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding"; Defendant has violated this law.

150.    The Act was promulgated to protect a class of individuals like Plaintiff who are insured under the policy purchased "primarily for personal, family or household use" pursuant to *73 P.S. § 201-9*.

151.    The purposes of the act apply hereto in this case, that is, to mandate that insurers like Defendant, Peerless act in good faith and with fair dealing and without the use of fraudulent, unfair, and/or deceptive acts or practices e.g. unreasonable activities to delay, false statements of coverage, etc. in the course of the evaluation, processing and/or the paying out of policy proceeds in a circumstance involving a valid claim on the part of individuals like that of Plaintiff seeking full and fair compensation for their injuries from this policy benefits.

152.    The defendant Peerless had a fiduciary duty to act in good faith and with fair dealing towards its insured under the policy of underinsurance.

153.    Defendant, Peerless breached its duty and obligations to Plaintiff and acted unfairly and deceptively for their financial gain against Plaintiff's interests by:

a)    utilizing unfair and/or deceptive practices to delay a payout UIM proceeds to further their financial interest for example repeatedly requesting the same records.

35

b) deliberately attempting to close the file shortly after the accident occurred on the baseless assumption that there were no injuries greater than the tortfeasor's $15,000.00 and suggesting to Plaintiff's parents that there was no basis for collecting funds from Peerless.

c) utilizing unfair and/or deceptive practices in the form of plausible deniability by failing to perform an IME to properly evaluate Plaintiff's injuries so that Defendant could downplay the serious and permanent nature of his injuries and falsely justify the lack of an offer ;

d) repeatedly asking for more documents; failing to make a good faith effort to promptly, thoroughly, and fairly evaluate the nature and extent of Plaintiff's injuries and make a fair offer to settle and failing to properly re-evaluate over the years and by extension failing to properly assess the value of his claim by failing to properly consider Plaintiff's evidence-based medical records and school documents already provided.

e) misrepresenting either directly or by inference that they would make a fair and full offer to settle his UIM claim if Plaintiff would provide just a little more medical information - when at all material and relevant times, Defendant had in its possession or should have had in its possession sufficient medical records and could have obtained on its own pursuant to authorizations in order obtain any records it deemed necessary to complete the claim or to verify the serious and permanent nature of Plaintiff's injuries and the foreseeable extent of damages;

f) Defendant acted unfairly by forcing Plaintiffs to "jump through hoops" unnecessarily and for the sole purpose of causing a delay to wear Plaintiff down in the hopes that he would capitulate and accept an inferior offer or forego his claim altogether.

g) failing to act in good faith to either make a timely good faith, fair offer to settle Plaintiffs' UIM claim until he was forced to expend time and money to file a complaint before the statute of limitations ran;

36

h) misrepresenting to Plaintiff that it was in the process of conducting a prompt, full and fair investigation of his claim while acting, in reality, to merely delay a settlement and/or which would cause delay and allow the statute of limitations to run for their financial benefit.

i) deliberately, knowingly, intentionally, or recklessly misrepresenting to Plaintiff that they desired and/or intended to settle the UIM claim when they never intended to make a full and fair offer to settle the claim.

154. Defendant Peerless breached its fiduciary duty of good faith and fair dealing by the unfair and/or deceptive acts and/or omissions in its dealings with Plaintiff.

155. At times material and relevant hereto, Defendant Peerless knew or should have known that there was no reasonable basis for their acts and/or omissions as are set forth above and herein, and that said acts and/or omissions, misrepresentations, and deceptive practices would harm Plaintiff.

156. Plaintiff reasonably and justifiably relied on Defendant's misrepresentations that they would act in good faith to evaluate his claim good faith and pay for damages under the policy of underinsurance, they would act in good faith to protect his interests as an insured passenger and pay up to the policy limits if serious injuries were sustained; Plaintiff relied on Defendant to his detriment and loss.

157. Defendant's unfair and deceptive business practices are ongoing and continue to date and have caused Plaintiff's damages, including delayed payout of his claim, loss of interest, investment opportunities, attorney's fees, court costs, and fees.

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant, Peerless in an amount in excess of the arbitration limits including policy limits of benefits under the policy, interest, fees, attorney's fees, delay damages, court costs, punitive damages, and any other such relief as the Court may deem just and proper.

By Joseph R. Armenti, Esquire
Attorney for Plaintiff, Chris Maximus Armenti

37

## VERIFICATION

I, _Chris Armenti_ , state that the facts contained herein are correct to the best of his knowledge, information and belief; and that the statements of fact are made subject to the penalties of 18 Pa. C.S.A. Sec. 4904 relating to unsworn falsification to authorities.

Chris Maximus Armenti
Plaintiff

1